## George H. Perrine, Defendant in Error, v. Chicago & Herrin Coal Company, Plaintiff in Error.

1. MINES AND MINING—*damages for coal taken.* A verdict finding the amount of coal removed from plaintiff's land should not be disturbed though not exactly sustained by either party's estimate where there was a great divergence in the testimony, and the finding is within the range of estimates made.

2. DAMAGES—*when coal is wrongfully mined.* In trespass for wrongfully mining coal, the owner is entitled to the value of the coal in its condition as soon as it is detached from the real estate.

3. DAMAGES—*wrongful mining of coal.* A jury's finding that the cost of transporting coal from where it was mined to the top was 25 cents a ton, is not sustained where the lowest estimate in evidence is 44 cents a ton.

Error to the Circuit Court of Williamson county; the Hon. W. W. CLEMENS, Judge, presiding. Heard in this court at the March term, 1912. Reversed and remanded. Opinion filed June 5, 1912.

Denison & Spiller, for plaintiff in error.

Neely, Gallimore, Cook & Potter, for defendant in error.

Mr. Justice McBride delivered the opinion of the court.

This case was tried by a jury in the Circuit Court of Williamson county, and resulted in a verdict and judgment for the plaintiff for $700, to reverse which this writ of error is prosecuted.

The defendant in error hereinafter called defendant, was the owner of lot five (5) of the assessment survey of the southwest quarter of the northwest quarter of Section thirty (30), Township eight (8) South, Range two (2) east, for which he received deeds in the years 1900 and 1901. The plaintiff in error, hereinafter called plaintiff, held a mining lease on the lands adjoining defendant's and was engaged in the business of mining and removing the coal from the lands so leased, and in the prosecution of its work during the years 1907 and 1908, mined and removed some of the coal from defendant's lands. Plaintiff's mining lease was obtained from Albert Perrine, a brother of the defendant, and plaintiff claimed that his lease by its terms lapped over on the lands of defendant. There is, however, some dispute between the parties about this. When defendant discovered that the plaintiff had been mining the coal underneath his land he so advised plaintiff and plaintiff at that time claimed he knew nothing about any encroachment. Plaintiff, however, claims that after that he had a survey made and found that there was an encroachment upon defendant's land. Defendant procured an order from court and had the mine surveyed. The plaintiff also had a survey made but there appears to have been a wide difference as to the number of tons of coal that were removed from defendant's land. Plaintiff's figures show from four hundred to four hundred eighty-seven

tons, while the computation as made by some of the defendant's witnesses places the amount at six thousand nine hundred seventy tons. A different mode and basis of computation was adopted by the different parties but neither of them were able to state that their computations were exactly correct, and were after all somewhat of an estimate. The jury, however, determined that the plaintiff had mined and removed one thousand tons of coal belonging to the defendant. The value of this coal, loaded on the cars, was fixed at about ninety-five cents per ton, and this was the value adopted by the jury. The cost of the production of the coal, including the transportation, was fixed by some of the witnesses at about ninety-one cents, and by other witnesses at sixty-seven to sixty-eight cents, and some of them in their estimates in the cost of transportation excluded the cost of loading the coal into the pit cars, and others in their estimates included this. The jury, however, found that the cost of transportation was twenty-five cents per ton, and the special findings of the jury constituted the basis of its general finding and the judgment.

The declaration was in trespass and charged that the defendant with force and arms broke and entered the close of the plaintiff without license and dug and removed the coal from his land. To this declaration the defendant filed the general issue. There were three special findings submitted to the jury which were answered by the jury, and are as follows:

"1st. If you find from the evidence that the defendant removed any coal from plaintiff's premises state how much you find was mined and removed. A. One thousand tons.

"2nd. What was the fair cash market value per ton of the coal at the top of defendant's mine at the time the coal was so mined and removed from plaintiff's land if it was so mined and removed by the defendant? A. Ninety-five cents per ton.

"3rd. What was the cost per ton of transporting

the coal from the place where it was shot or mined down from its natural location on the plaintiff's premises to the top of defendant's mine at the time the coal was mined or removed from the plaintiff's premises, if it was so mined and removed? A. Twenty-five cents per ton.''

The errors assigned by the plaintiff are, that the verdict and special findings of the jury are contrary to the law and the evidence and that there is no evidence upon which to base such verdicts. That the verdict is excessive. That the court gave improper instructions and erred in refusing to grant a new trial.

The points argued in plaintiff's brief, however, are more particularly directed to the fact that the special findings and the general verdict of the jury and the judgment of the court are not sustained by the evidence, and that improper remarks were made to the jury by counsel for defendant which were prejudicial to the plaintiff.

The plaintiff in his brief claims that there is no evidence supporting the special findings that it mined and removed one thousand tons of coal from the defendant's premises. There was great divergence in the testimony of the witnesses as to the amount of coal removed; some estimating as low as four hundred tons and others as much as six thousand nine hundred seventy tons. It is true that the verdict is not sustained exactly by either estimate but it is within the range of the estimates made and we are not disposed to disturb the verdict for that reason.

Counsel for plaintiff and defendant are practically agreed as to the value of the coal which the jury fixes at ninety-five cents per ton. It is insisted, however, very strenuously by counsel for plaintiff that the price of twenty-five cents per ton for transporting the coal, from where it fell when shot down, to where it was loaded upon the cars is not warranted by any evidence in this record, and we agree with the plaintiff that the evidence of plaintiff or defendant does not sustain this

finding.   The plaintiff below (defendant here) placed
John Alexander, manager of the coal mine, upon the
witness stand and proved by him that the cost of trans-
porting coal from where it was mined and placed on
board the cars was sixty-seven and four-tenths cents;
that there was no market for it until it goes up into
the hopper and is dumped into the car.   The next wit-
ness examined upon this question was W. A. Perrine
who claimed that he had, at one time, been a stock-
holder of the defendant and was superintendent and
general manager of the Watson Coal Company for
several years and that in his judgment it would cost
seventy-seven and one-half cents per ton to produce
coal in the mines around Herrin, and that in the years
1907 and 1908 it cost about seventy-eight cents per ton
and this included the shooting, digging and transport-
ing and that the scale of wages paid to the miner for
shooting and loading was forty-eight cents per ton.
Robert Morris, another witness of the plaintiff below
testified that in 1907 and 1908 the cost of producing
coal on the cars at the top of the mine varied from
sixty-eight to a little over seventy cents and that at
that time it cost forty-eight cents to dig the coal and
load it into the pit cars.   And this was the substance
of the testimony of the plaintiff below upon this ques-
tion.

P. H. Carrol testified that, where one miner shot the
coal and another loaded it, it was the custom to give
each of them half of the forty-eight cents allowed for
shooting and loading.   John Alexander again testified
on behalf of the defendant that the men were paid for
loading the coal into the pit cars twenty-four cents per
ton, or one-half the amount allowed for mining and
shooting.   He gave the details of the cost of transport-
ing the coal from where it was shot down to the cars
at the top of the mine, and repeated his former state-
ment, that it cost sixty-seven and four-tenths cents per
ton for transporting and that this included twenty-
four cents of the forty-eight cents that was paid to the

miner for shooting and loading. According to the most favorable testimony for the plaintiff below, the cost of transporting the coal, which would include the mining, loading on the pit cars and transporting to the freight cars above, was sixty-eight cents, and that of that amount it cost twenty-four cents to mine and shoot down the coal, as the evidence disclosed, then this would make the cost of transportation at the very least calculation, under this evidence, forty-four cents, and would have justified a verdict for fifty-one cents per ton only, or five hundred ten dollars under the special finding of one thousand tons at ninety-five cents per ton; and if the testimony of part of the plaintiff's witnesses and the defendant's witnesses, that the cost of transportation alone is sixty-seven and four-tenths cents per ton, then the verdict should have been $276, but upon the theory of plaintiff or defendant the cost of transportation fixed by the jury is much less than that shown by the evidence, and the general verdict of seven hundred dollars is excessive. The measure of damages recognized by the courts in cases of this character is the value of the coal after it was loaded upon the cars, if it was so loaded, less the cost of transporting it from the place where it was dug to the place where it was loaded upon the cars, and this rule seems to have been adopted by counsel for appellant and appellee in the trial of this case, and we think it a correct rule that the owner of the coal is entitled to its full value in its severed condition. In other words, as soon as the coal has become detached from the real estate and converted into personal property the owner is entitled to its value in its then condition, and this rule is clearly recognized in the case of Donovan v. Consolidated Coal Co., 187 Ill. 28, and many other cases which may be referred to.

It is also complained that counsel for plaintiff in the trial below made improper remarks in addressing the jury which were calculated to prejudice the minds of the jury against the defendant. We have examined

the remarks contained in the abstract and believe that some of them were improper and calculated to prejudice the minds of the jury against the defendant but it is not necessary to determine that the remarks were of such a character as would necessitate a reversal of the judgment as the judgment must be reversed upon other questions, and in another trial such remarks can and should be avoided.

We are of the opinion that there is no evidence in this record that will sustain the special finding of the jury that the cost of transporting this coal from where it was mined, to the top, was only twenty-five cents. We think the jury failed, even upon the theory of plaintiff's witnesses, to count the cost of loading the coal into pit cars, as part of the transportation, which should have been done, and if they had adopted the theory of the defendant a much greater amount should have been allowed for transportation. The special finding of the jury as to the cost of transportation under any view of this evidence is incorrect and for that reason the judgment is reversed and the cause remanded.

*Reversed and remanded.*